UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
NOV 18 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-24-GWU

ROGER L. PENNINGTON,            PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Pennington

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Roger Pennington, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of right carpal tunnel syndrome and degenerative disc disease. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Pennington retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 36 years, 11th grade education, and semi-skilled work experience could perform any jobs if he were limited to lifting no more than 12 pounds, and also had the following non-exertional impairments. (Tr. 59). He: (1) would be required to alter positions between sitting and standing at 20 to 30 minute intervals; (2) needed to avoid climbing ladders, ropes, or scaffolds, and avoid vibration; (3) could do no more than occasional stair climbing, stooping, crouching, or crawling; and (4) would be capable of "frequent" fingering with the right hand. (Tr.

7

59-61). However, if the individual's ability to perform fingering was "occasional," the VE testified that there would be no jobs the person could perform. (Tr. 61-2).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff testified that, in addition to problems with his lower back, he had developed carpal tunnel syndrome in both hands, with the right hand being worse than the left. (Tr. 48-50). Office notes from the plaintiff's treating family physician, Dr. Jose Echeverria, indicate that he diagnosed carpal tunnel syndrome on the right side on October 30, 2002, and prescribed pain medication and a wrist brace. (Tr. 282). He did not list any specific functional restrictions. The ALJ adopted the physical restrictions primarily from Dr. James Bean, a neurosurgeon who examined the plaintiff on three occasions in 2002 for rehabilitation of a lower back injury; no reference is made in his notes to an arm or shoulder examination (Tr. 236-9). Another physical examiner, Dr. Ronald Dubin, also examined the plaintiff only for his back pain. (Tr. 260), and did not indicate any restrictions on reaching or handling in his functional capacity assessment (Tr. 258-9).

Two state agency reviewers gave opinions, and one of these sources, at Exhibit 10F, was specifically cited by the ALJ as supporting his choice of restrictions on climbing, vibration, climbing, and "frequent right-handed fingering." (Tr. 20). Exhibit 10F, however, does not appear to be signed by an acceptable medical

8

source under the Commissioner's regulations. (Tr. 298-305). The second state agency reviewer, Dr. C. Hernandez, clearly was an acceptable medical source, and his assessment is at Exhibit 11F. (Tr. 307-13). The restrictions found by Dr. Hernandez are generally the same as the reviewer in 10F, and are not inconsistent with the hypothetical question, with the highly significant exception of the plaintiff's ability to perform what is categorized as "fingering (fine manipulation)." Dr. Hernandez limited this to "occ[asional]" on the right side. (Tr. 309). The other reviewer had stated that it was "limited to frequently due to CTS." (Tr. 301).

This distinction becomes critical in view of the VE's testimony that the plaintiff could perform some jobs if he retained the ability to perform frequent fine manipulation with the right hand, but that there would be no jobs if it were only occasional. (Tr. 61).[1]

Therefore, a remand will be required in order to clarify this issue.[2]

On remand, in addition to developing the above issue, Mr. Pennington's educational level should be addressed. The ALJ rejected IQ scores in the 60s by Reba Moore, a consultative psychological evaluator (Tr. 266), noting that the plaintiff

---

[1] Even with an ability for "frequent" manipulation, the VE was able to identify only 200 jobs within a 75 mile radius of Harlan, Kentucky, the plaintiff's home, and 300,000 such jobs nationally. (Tr. 60).

[2] In view of the fact that the plaintiff's carpal tunnel symptoms were not extensively worked up and that no treating or examining source suggested specific restrictions, an award of benefits is not indicated.

9

Pennington

had tested at a higher level on the verbal scale (the only scale to be administered due to reported visual difficulties) in testing by another psychologist, Phil Pack (Tr. 255-6). Evidently, Mr. Pack was unable to administer the Wide Range Achievement Test-3 (WRAT-3) due to the same visual problems. (Tr. 256). Reba Moore, however, was able to enlarge the WRAT-3 and obtained first grade reading and fourth-grade mathematics scores. (Tr. 266-7). While the plaintiff testified that he attended school for the 11th grade and had worked as a diesel mechanic, he also stated that he could not read very well. (Tr. 37, 44). He informed Mr. Pack that he had been in Special Education throughout school after having been retained in the first and second grades (Tr. 253) and had told Reba Moore that he had been in some Special Education classes, had never learned to read, and had obtained his driver's license by an oral examination (Tr. 264). On remand, the plaintiff's actual achievement level should be considered as part of the hypothetical question, rather than merely the numerical grade that he completed. 20 C.F.R. Sections 404.1564(b); 416.1564(b).

The decision will be remanded for further consideration of the factors set out in this opinion.

This the ___18___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

10